DON CARROW, )
)
      Plaintiff, )
)
v. )     Case No. 4:08CV886 HEA
)
THE STANDARD INSURANCE )
COMPANY, )
)
      Defendant, )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for final determination on the claims of

Plaintiff raised in his First Amended Complaint. Plaintiff seeks to recover benefits

under the long term disability plan of his employer. Having considered the

pleadings, trial briefs, exhibits, oral arguments and the proposed findings of fact

and conclusions of law submitted by the parties, the Court hereby makes and enters

the following findings of fact and conclusions of law in accordance with Rule

52(a) of the Federal Rules of Civil Procedure.

### Findings of Fact

Plaintiff was employed by Jager Industries US, Inc. in January 2000 as a

technical sales representative. As a full time employee of Jager, Plaintiff was

eligible for short term disability benefits and for long term disability benefits under

the Group Long Term Disability Insurance Policy, Policy Number 124728-C. The

policy owner of the Group Long Term Disability Insurance Policy (LTD policy) is

Plaintiff's employer, Jager Industries US, Inc.  The underwriter and claims

administrator is Standard Insurance Company.

The LTD Policy defines Disability as follows:

"You are Disabled if you meet one of the following definitions during
the period it applies:
A. Own Occupation Definition of Disability;
B. Any Occupation Definition of Disability; or
C. Partial Disability Definition

Own Occupation means any employment, business, trade, profession,
calling or vocation that involves Material Duties of the same general
character as your regular and ordinary employment with the
Employer. Your Own Occupation is not limited to your job with your
Employer.

Material Duties means the essential tasks, functions and operations,
and the skills, abilities, knowledge, training and experience, generally
required by employers from those engaged in a particular occupation.

A. Own Occupation Definition of Disability

During the Benefit Waiting Period and the Own Occupation Period
you are required to be Disabled only from your Own occupation.
You are Disabled from your Own occupation if, as a result of Physical
Disease, Injury, Pregnancy or Mental Disorder, you are unable to
perform with reasonable continuity the Material Duties of your Own
Occupation.

Note: You are not Disabled merely because your right to perform your
Own Occupation is restricted, including a restriction or loss of license,
or because you suffer a loss of Predisability Earnings as a result of
disclosure of any Physical Disease, Injury, Pregnancy or Mental
Disorder.

B. Any Occupation Definition of Disability

During the Any Occupation Period you are required to be Disabled
from all occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of any gainful occupation for which you are reasonably fitted by education, training and experience.

The LTD Policy, under ALLOCATION OF AUTHORITY, further states:

Except for those functions which the Group Policy specifically reserves to the Policyowner, we (referring to Standard) have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

In February 2005, Plaintiff was unable to work due to a diagnosis of avascular necrosis of the right hip and a subsequent core decompression surgical procedure on February 16, 2005.

Plaintiff applied for and was approved for short term disability (STD) benefits on March 2, 2005 and received a weekly benefit of $657.46.

Plaintiff was expected to return to work in April 2005 but was unable to return to work due to pain and complications following the surgical procedure. Because of the complications and the unsuccessful results of the surgery, Plaintiff was scheduled to see a specialist for the avascular necrosis.

Plaintiff's claim for STD benefits was extended until May 2005, at which time his claim was converted to long term disability (LTD) claim. On May 10, 2005, Plaintiff was notified that his STD claim was extended to May 16, 2005 and

LTD benefits were approved as of May 17, 2005.

On September 30, 2005, Plaintiff underwent a total arthroplasty of the right hip (hip replacement) at Barnes-Jewish Hospital, performed by Dr. R. Stephen Burnett. Plaintiff's preoperative diagnosis was osteoarthritis of the right hip with collapse of the femoral head and early arthritic joint space changes.

On October 17, 2005, Plaintiff received a letter from Standard informing him that it was his responsibility to inform the company if he was receiving income from any other source and that he must apply for Social Security Disability benefits, as required by his group policy, if he was to remain off from work for six months or more.

Plaintiff underwent a MRI of the left hip in November 2005. This indicated avascular necrosis of the femoral head.

On February 23, 2006, on a post-operative visit, Dr. Burnett found that Plaintiff's right hip replacement was "doing great," had bilateral knee osteoarthritis, the left greater than the right, newly diagnosed gout, being treated with medication, and left hip osteonecrosis, without collapse. Dr. Burnett was not comfortable completing a form for chrome disability, as he found Plaintiff asymptomatic in both hips. Dr. Burnett found Plaintiff had no disability and he, Dr. Burnett, thought he would be a reasonable candidate to return to work at normal duties.

In March 2006, Plaintiff returned to work at Jager Industries and was able to

work until June 1, 2006.  Plaintiff claimed he could no longer work due to progressive pain from osteoarthritis in both knees, left hip and spine.  On June 16, 2006, Dr. David A. Mullen completed the Disability Claim Attending Physician's Statement indicating Carrow's diagnosis as Median Neuropathy, Osteoarthritis of the Knees, Hip and Spine, Dysesthesia, Hypoesthesia, Pain in the Knees, Hip and Spine and Radiculopathy.  Dr. Mullen opined that Plaintiff could sit, stand and walk four hours a day, occasionally bend/stoop and alternate between standing and sitting six hours a day.

The DMR Staffing Form prepared by Dena Facciabene of Standard Insurance stated,

> Given client's history of S/P hip replacement in 05, with an attempt to RTW from 3/06-6/06 and diagnosis of OA knees, hip and spine, it may be reasonable that he has functional abilities as indicated in 6/16/06 APS by FP.  However to better determine LT implications of his conditions or functionality, it may be beneficial to review musculoskeletal Qx last OV w/ orthopedist who performed hip replacement in 05.

Plaintiff was approved for Short Term Disability on July 12, 2006 and was notified by telephone.  He responded to questions put forth to him by Dana Facciabene regarding his current medical treatment and his previous hip replacement.  He informed Ms. Facciabene that he was currently treating with Dr. Mullen and had completed treatment with Dr. Burnett, the orthopedic surgeon located in St. Louis, who had performed the hip replacement.  Plaintiff reported he

was taking three medications, namely Cercopin, Neprocin and Hydrocode. Additionally he has received injections in his knees. He reported difficulty traveling.

On August 18, 2006, Plaintiff's claim was reviewed by a nurse/vocational consult, Bozena Irish, who determined that benefits were appropriate after reviewing the medical treatment. The summary of the review states:

> Based on review of provided medical records, Clmt would not have L&R's from b/l hip OA after recovery from 10/5 R-THR (per 2/23/06 Ortho Visit Note). However, in view of persistent L-knee pain complaints w 3/06 x-ray documented b/l knees moderate tricompartmental OA & ortho (2/23/06 OV) exam documented mild varus deformity L&R's as indicated in 6/6/06 by FP of 4-hrs stand/walk would be reasonable (please refer to 6/6/06 APS. At this time there is no documentation to support 4-hrs sit only & lift/carry 10#; that is there is no documentation to preclude 8-hrs sit w position change in a workday & lift/carry up to 20#. These L&R's are likely long term given documented OA of lower extremities"

On August 23, 2006, the Standard notes indicate a correction was made and since this was a previous LTD claim, the payments were transferred from STD to LTD.

On August, 23, 2006, a case note indicates that Mr. Belanger of Jager Industries stated that Carrow is not required to stand/walk more than 4 hours in a day. His job requires traveling to clients and teaching in classroom settings. Mr. Belanger stated "clmt can sit while teaching. His job requires significant travel and telephone work".

The job description for a Technical Sales Representative includes the following:

> Accountable for the sales of Jager Building Systems, Inc. and third party Engineered Wood I Beams, Software, LVL Beams and Headers, Rim Joist and Hangers in geographical area of responsibility (Northern Alabama, Northern Arkansas, Southern Illinois, Iowa, Kansas, Western Kentucky, Missouri, Nebraska, Oklahoma, Western Tennessee(west of Nashville)
>
> Co-ordinate client plant visits, accompany plant personnel on visits to client operations to ensure satisfaction.
>
> Expansion of sales base in area of responsibility for engineered wood and truss products, meet new clients, attend and participate in trade shows and work with clients and potential clients to expand the acceptance of wood products.

In June 2006, nerve conduction studies were performed by John D. McGarry, MD.  Plaintiff was found to have Bilateral Carpel Tunnel Syndrome.

During July and August 2006, Dr. Mullen Plaintiff  received 3 Hyalgan injections into both knees as treatment for his osteoarthritis. He received additional injections in September and October 2006.

On November, 6, 2006, Plaintiff's case was referred to Allsup Social Security Claims Review by Standard.

In January 2007, Plaintiff received notification that he had been approved for Social Security Disability benefits. The benefit began in January 2007 and was for $1582.00 per month.

On April 11, 2007, Plaintiff was informed that Standard had overpaid him

due to the offset of his social security benefit and a refund was requested.

A DMR Claim Consultant Form, dated June 13, 2007 is contained in the administrative record. The form is unsigned, but lists Chris Calazzo as the Analyst. A history of Plaintiff's medical conditions is contained in the form but the summary fails to mention that Plaintiff returned to work from March to June 2006.

Defendant received additional medical records from Plaintiff. On August 25, 2006, Dr. Cralle treated a fractured finger that Plaintiff had caught on a latter. Although Dr. Cralle initially indicated the finger was healing well, after an x-ray on September 29, 2006 revealed otherwise, Dr. Mullen referred Plaintiff to Dr. Richard Hulsey. Dr. Hulsey say Plaintiff on October 5, 2006 and characterized him as an "active 59-year old male with a history of lower back problems." Plaintiff was given a finger splint.

On November 6, 2006, Plaintiff called Dr. Mullen complaining of numbness. Dr. Mullen recommended referral for carpal tunnel repair. Plaintiff indicated that he wanted to wait until after deer season. On January 3, 2007, Plaintiff was seen by William Strecker, MD, regarding night pain and paresthesias in both hands. He subsequently underwent a bilateral carpal tunnel decompression. The carpal tunnel release occurred a week later and in a January 17, 2007 follow up visit with Dr. Strecker, Plaintiff reported that his night pains seemed to be resolved. Dr. Strecker recommended a home exercise program.

On February 27, 2007, Chris Caiazzo forwarded a medical questionnaire to Plaintiff regarding his current condition. The medical questionnaire was answered by Dr. Mulllen, who stated Plaintiff's primary diagnosis as total hip replacement and secondary diagnosis as degenerative joint disease, multiple. Dr. Mullen stated that Plaintiff has degenerative osteoarthritis in his knees and hip which make ambulation painful and prevent the use of stairs. Plaintiff also has back arthritis with spondylosis and he is not able to lift, pull or carry and causes sitting to be painful. Dr. Mullen rates Plaintiff at 70 % on the Karnofsky Performance Scale which classifies Plaintiff as cares for self but unable to carry on normal activity or to do active work. Dr. Mullen's comments are "Not capable of return to 40 hour work week" Dr. Mullen stated Plaintiff's ability to sit, stand and walk was reduced to only 2.5 hours per day, but suggested he could push and pull, lift and carry as much as 50 pounds occasionally to frequently.

On June 23, 2007, a Physician Consultant Memo was prepared by Richard Handelsman, DO. Dr. Handelsman notes that Plaintiff has been out of work since February 15, 2005 and that he should have returned to work as of February 23, 2006, as per Dr. Burnett's note. Dr. Handelsman notes that Plaintiff did not have carpel tunnel surgery until "after deer season," thus the condition could not have been "bothering the claimant too much."

Dr. Handelsman conducts disability reviews for four large insurance

companies, listed as Unum-Provident, Cigna, Swiss Re and The Standard, as per his CV.  Pursuant to the form 1099-C provided by Standard Insurance Company as part of their discovery responses, Dr. Handelsman was paid $128,834.18 and $55,257.50 by The Standard Life Insurance Company in the 2007 tax year. This is reported as miscellaneous income, medical and healthcare payments on two separate forms 1099-C.

On July 3, 2007, Chris Caiazzo requested information about Plaintiff's education, training and experience, in order to "help with the administration of this claim".

On July 26, 2007, Terry Hopkins, Vocational Case Manager performed a Transferrable Skills Assessment and Any Occupation Review.  Plaintiff is reported to have a Bachelor of Science degree. An acceptable Salary level for Mr. Carrow is stated at $3,019.37 per month. According to Dr. Arnold Kaminer's report (there is no such report in the administrative record), Plaintiff's limitations and restrictions are stated to be no prolonged standing or walking without the ability to rest, no repetitive climbing, no squatting, crouching, crawling or kneeling. The report listed several "occupational alternatives", reportedly sedentary in nature and comparable with Plaintiff's education, training and experience.  These include Sales Representative, Hotel Services, which requires a high school diploma and sales experience; Supervisor, Order Takers, requiring an associate "or even a bachelor's

degree along with some experience"; and Customer Service Representative Instructor, a "skilled occupation generally requiring a bachelor's degree along with experience". The report indicated these occupations exist in the claimant's labor market in sufficient numbers to allow reentry into the workforce given the claimant's residual functionally capacity and transferrable skills, they also "meet or reasonably approach the wage consideration as noted above."

On July 31, 2007, Plaintiff was notified by Nicole Smushko of Standard that he did not meet the Any Occupation Definition of Disability and that he was not disabled from all occupations. The Physician Consultant who reviewed Plaintiff's medical records determined that his medical condition was "improved." Plaintiff was advised that he is capable of performing a sedentary occupation of "Sales Representative, Hotel Services, Supervisor, Order Taker, Customer Service Representative , Instructor." The letter states that the jobs cited exist in Carrow's labor market area and the salaries exceed his disability benefit. Plaintiff was also told to reimburse $1,107.57 for overpayment due to the social security disability benefit off-set. Additionally, Plaintiff became ineligible for a premium waiver for the group life insurance as he was no longer considered totally disabled.

On August 6, 2007, Plaintiff notified Chris Caiazzo that he wished to appeal the decision to terminate his benefits.

On August 8, 2007, Dr. Mullen wrote a letter to Ms. Smushko indicating that

Mr. Carrow continues to be totally and permanently disabled due to degenerative changes through out his entire skeletal system. He states that Plaintiff is unable to sit or drive for prolonged periods, he is unable to walk for any distance or period of time, he is unable to use the upper extremities in any repetitive movement, his gait is antalgic with broad based valgus gait with internal rotation of the hips and a stiff back and range of motion is diminished to bending and extension. Dr. Mullen did not cite any medical evidence in his letter.

On August 20, 2007, Dr. Handelsman was asked to review Dr. Mullen's August 8, 2007 letter and consider a telephone call with Dr. Mullen. Dr. Handelsman wrote a note on the bottom of the request indicating there was no new information.

On August 21, 2007, Chris Caiazzo requested additional records from Dr. Mullen, for the period from March 1, 2007 to the present.

Dr. Mullen provided updated records. On August 30, 2007, Chris Caiazzo informed Plaintiff that the new records had not altered Standard's decision but the claim would be reviewed by the Administrative Review Unit.

On September 10, 2007, Plaintiff was notified by Laura Gigoux that she would be handling the review of his claim. Laura Gigoux requested documentation of diagnostic studies indicating arthritis of the spine with spondylosis from Dr. Mullen. Records were provided from 2001 indicating that

Carrow had diskography and a CT scan of the lumbar spine. He was found to have disc degeneration with a linear tear and disc protrusion. The CT showed at L4-5 a minimal broad-based posterior disc bulge with no focal herniation and at L5-S1 a vacuum disc and degenerative changes along the anterolateral margins of the disc space posteriorly with minimal broad based disc bulge but no herniation. An MRI of the lumber spine showed some dessication of the intervertebral disc at L4-5 and at l5-S1. Additionally, the report notes there is heavy calcification of the aorta as well as the iliac arteries and this has a positive correlation with coronary artery disease.

On September 18, 2007, a second Physician Consultation was completed by Hans Carlson, MD, who stated the following:

> It would be reasonable to anticipate this 57-year-old individual with diagnoses noted above would be precluded from light level work. The individual would be capable of performing sedentary work on a full time basis with reasonable limitations and restrictions of occasional standing and walking with the ability to reposition as tolerated as well as only occasional fingering, handling and reaching with respect to the upper extremity carpal tunnel release. These would also be appropriate limitations and restrictions with respect to the knee degenerative arthritis as well.

> In general, I would anticipate that an individual with mild lower lumbar spine degenerative changes would be capable of sitting for up to 2 hours with the ability to change position briefly for comfort…

Pursuant to a form 1099-C provided by Standard as part of their discovery responses, Dr. Carlson was paid $83,232.00 for miscellaneous income, non-

employee compensation for the 2007 tax year.

On October 19, 2007, Dr. Mullen wrote a letter to Laura Gigoux in which he stated that Plaintiff had the following medical problems:

> Mild medial compartment narrowing of the right knee and moderate medial and mild lateral compartment narrowing of the left knee with marginal osteophyte formation of both knees-confirmed by x-ray on 10/1/07

> Chronic intractable back pain secondary to bulging disc at L4-5 and L5-S1, disc height loss and endplate degenerative changes-confirmed by MRI on 11/4/00 and mild bilateral neuroforaminal stenosis-confirmed by MRI on 10/1/07

> Avascular necrosis of the left hip, hip replacement on the right

> Gouty arthritis of the feet

> Carpal tunnel syndrome, with surgical release in January 2006

> Atherosclerotic vascular disease of the aorta

Dr. Mullen further stated that Plaintiff was unable to sit or drive for prolonged periods, unable to walk for any longer period or distance, unable to use his upper extremities for repetitive action, severely diminished range of motion for bending or extending and poor sleep due to chronic pain and stress. Dr. Mullen concluded that it is his opinion that Plaintiff is unable to work at any occupation and that he is totally and permanently disabled.

On October16, 2007, Dr. Mullen expressed the same opinion in a letter to Chris Caiazzo of Standard.

On November 2, 2007, Laura Gigoux wrote a letter to Plaintiff indicating that the diagnostic tests performed in October 2007 would be considered in the administrative review of his claim and that it was hoped the review would be complete by November 12, 2007.

On November 2, 2007, a medical referral was forwarded by Laura Gigoux to Dr. Hans Carlson who had previously reviewed Plaintiff's records with the additional medical diagnostic information and Dr. Mullen's letters. The questions asked, in part, were as follows:

> "As you are aware, while sedentary occupations involve sitting most of the time, they do involve walking or standing for brief periods of time and can involve up to occasionally (1 to 33% of an 8 hour day) walking or standing, for brief periods. I note this as Dr. Mullen makes reference to a restriction for prolonged sitting. Do you find the updated diagnostic studies would support Mr. Carrow is prevented from sitting most of the time with occasionally walking or standing for brief periods?

> Would the clinical and diagnostic finding in regard to Mr. Carrow's knees prevent him from sedentary activity, either alone or in combination with consideration for the spinal diagnostic findings and clinical findings?

> Would the avascular necrosis of the bilateral hips prevent him form sedentary activity, either alone or in combination with the above noted conditions, and also considering Dr. Mullen's medical documentation regarding the bilateral hip condition. Do the medical records contain documentation that Mr. Carrow's diagnosis of gouty arthritis is a recurrent or limiting condition on an ongoing basis? Does the diagnosis of gouty arthritis of the feet support, either alone or in combination with the above conditions result in limitations and or restrictions to sedentary occupational activity?

In the November 25, 2007 Physician Consultant Memo, Dr. Carlson stated that Plaintiff would not be precluded from sitting if he had the abilities detailed previously to reposition occasionally. Dr. Carlson sites Dr. Burnett's February 2006 record regarding Plaintiff's gout as "doing well". Dr. Carlson came to the conclusion that Plaintiff's arthritis and degenerative disc disease do not preclude him from a sedentary work level.

On December 11, 2007, a hand written note authored by Laura Gigoux stated that she "consulted" with Dr. Fancher on that date regarding Dr. Mullen's letter that Plaintiff has atherosclerotic vascular disease of the aorta and poor sleep due to chronic pain and stress. Dr. Fancher was shown Plaintiff's prescription logs (date not stated) from Dr. Mullen and reviewed the office notes of July 07 and August 07 and did not see any reference to chronic pain, poor sleep or cardiac condition. Dr. Fancher concluded

> The vascular disease of the aorta would not have medication prescribed, rather, a physician would address any underlying risk factors & offer support to address those risk factors, if any. He further stated there is no attempt to treat stress or insomnia documented in Dr. Mullen's office and no indication he was referred to a psychologist or psychiatrist.

> Dr. Fancher also concluded that there is no documentation of a large aortic aneurysm, nor evidence of lower extremity claudication and that the available medical documentation does not support a cardiac condition that would prevent an individual from the performance of sedentary occupational activity.

On December 12, 2007, Plaintiff's claim was once again rejected in that the

"medical information in your claim file is insufficient to support that you have limitations and or restrictions of a severity to prevent you from performing the material duties of any gainful occupation for which you are reasonably fitted by education, training or experience, and there are alternate occupations for which you qualify."

**Discussion**

**Standard of Review**

In *Metropolitan Life Insurance Co. v. Glenn,* 128 S.Ct. 2343, 2347-48 (2008), the Supreme Court acknowledged that in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111-13 (1998), the Court set out four principles as to the appropriate standard of judicial review under ERISA, § 1132(a)(1)(B), as follows: (1) A court should be "guided by principles of trust law," analogizing a plan administrator to a trustee and considering a benefit determination a fiduciary act, *id.,* at 111-113, 109 S.Ct. 948; (2) trust law principles require de novo review unless a benefits plan provides otherwise, *id.,* at 115, 109 S.Ct. 948; (3) where the plan so provides, by granting "the administrator or fiduciary discretionary authority to determine eligibility," "a deferential standard of review [is] appropriate," *id.,* at 111, 115, 109 S.Ct. 948; and (4) if the administrator or fiduciary having discretion "is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion,' " *id.,* at 115, 109

S.Ct. 948.  There is no dispute that the plan gives Defendant the discretionary authority to determine Plaintiff's eligibility for long-term disability benefits.  Thus the standard of review in this matter is for an abuse of discretion, with considering the conflict as one factor to determine whether the administrator abused its discretion.  *Chronister,* 563 F.3d 773, 776 (8th Cir. 2009).

Plaintiff argues that Defendant abused its discretion in failing to give a full and fair review of Plaintiff's claim.  He argues that the determination of his treating physician was not given the proper consideration.  However, a plan administrator is not required to give more deference to a treating physician's opinion over the reviewing doctor's opinion.  *Weidner v. Federal Express Corp*., 492 F.3d 925, 930 (8th Cir. 2007); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Cagle v. Unum Life Ins. Co. of America*, 2009 WL 995544 (E.D. Mo. 2009).

The record establishes that Defendant considered all of the evidence presented in support of Plaintiff's claim.  It is undisputed that Plaintiff's hip surgery was successful and that his surgeon did not consider Plaintiff unable to work at "any" occupation, which is the requirement under the Plan.  Plaintiff delayed his carpal tunnel syndrome treatment himself, and furthermore, that treatment was successful as well.  Plaintiff did not receive Hyalgen injection in his knees after October, 2006.

Dr. Handelsman, Defendant's hired consultant, reviewed Plaintiff's medical records. He determined that although Plaintiff had limitations, however, he was not disabled from "any occupation."

Dr. Carlson reviewed all the medical records after Plaintiff appealed the denial. Dr. Carlson concluded that Plaintiff could perform sedentary work on a full time basis. Dr. Carlson reviewed Dr. Mullen's determination of Plaintiff's disability. He reported that Plaintiff had mild, single level lumbar spine degenerative changes, mild right knee arthritis and moderate left knee arthritis. Dr. Carlson noted that Plaintiff had "done well" following his right hip replacement and was doing well with the left side..

Defendant also sought the opinion of Dr. Fancher. Dr. Fancher noted that Dr. Mullen's office visit notes did not include any reference to chronic stress, poor sleep or cardiac condition, which conditions were referenced in Dr. Mullen's letters of August, 2007 and October, 2007.

Defendant also had a vocational case manager review Plaintiff's claims. The vocational case manager determined that there were at least three occupations Plaintiff could perform, was qualified to perform, existed in his labor market, and provided comparable wages to his prior occupation.

Under an abuse of discretion standard, the decision of the Plan Administrator will not be disturbed if it is "reasonable." Reasonableness is

measured by whether substantial evidence exists to support the conclusion. *Wakkinen v. Unum Life Insurance Co. of America*, 531 F.3d 575, 583 (8th Cir. 2008).

The Administrative Record clearly shows that Defendant considered all of the medical evidence and opinions offered by Plaintiff and by its consulting physicians. In addition, Defendant considered the vocational expert's opinion. There is no dispute that Plaintiff suffered from certain medical conditions which precluded him from performing his previous occupation, however, under the Plan, Plaintiff must establish that he was unable to perform **any** occupation. Considering his limitations and the medical evidence before Defendant, the conclusion that Plaintiff could perform sedentary work was not an abuse of discretion. Defendant concluded that Plaintiff's medical conditions were not completely disabling, a conclusion that is supported by the evidence presented and the opinions rendered based on that evidence.

Plaintiff urges reversal of the denial based on the Social Security award of permanent disability. Defendant considered the Social Security award, however, under the terms of the Policy, Defendant was not required to rely soling on this determination. Generally, a plan administrator is not bound by a Social Security Administration determination that a plan participant is disabled. *Rutledge v. Liberty Life Assur. Co.*, 481 F.3d 655, 660-61 (8th Cir. 2007).

Finally, Plaintiff attempts to create an issue with regard to the inherent conflict by presenting evidence that the consulting physicians were compensated for their review. Defendant has presented sufficient evidence to establish that it has taken steps to ensure that the financial compensation of all individuals involved with benefit decisions has no connection to their opinions. Its analysts and physician consultants are instructed to be neutral evaluators, without regard to whether their involvement results in an award of benefits or not. Plaintiff has presented no evidence to the contrary, and as such, the Court finds that the inherent conflict is not a significant factor in the Court's determination. *Fingers v. Std. Ins. Co.*, 2009 WL 1763332 (E.D.Mo.2009); *McAuley v. Fed. Ins. Co.*, 2009 WL 913510 (E.D. Mo. 2009).

## Conclusions of Law

Based upon the foregoing analysis, the Court concludes the following conclusions of law:

Defendant's decision to deny Plaintiff's claim for long term disability under the Plan was not an abuse its discretion.

The decision to deny Plaintiff's claim for long term disability benefits under the Plan at issue was reasonable.

The inherent conflict of interest which exists by reason of the Plan administrator's dual role as insurer and evaluator was not a significant factor in its

decision to deny Plaintiff's claim.

Because Defendant's denial of Plaintiff's claim was not an abuse of discretion, the decision is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of Defendant to deny Plaintiff's claim for long term disability benefits under the Plan herein is **affirmed**.

A separate judgment in accordance with the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure is entered this same date.

Dated this 27th day of August, 2010.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE